Date signed March 21, 2012



NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| Vito Simone and | * | Case No. 09-12555- NVA |
| Gail Simone | * | |
| Debtors. | * | (Chapter 7) |
| *    *    *    *    *    *    * | * | |
| Debra Donahoo | * | |
| Plaintiff,<br>v. | * | Adv. Pro. No. 09-0296-NVA |
| | * | |
| Vito Simone and Gail Simone | * | |
| Defendants. | * | |
| *    *    *    *    *    *    *    *    *    *    *    * | | |

### MEMORANDUM IN SUPPORT OF ORDER ENTERING
### JUDGMENT OF NON-DISCHARGEABILITY IN FAVOR OF PLAINTIFF

Debra Donahoo ("Ms. Donahoo" or the "Plaintiff") filed a Complaint To Determine Nondischargeability of Debt against Vito Simone and Gail Simone, the debtors herein ("Mr. and Mrs. Simone" or the "Debtors").  Ms. Donahoo seeks to except from discharge a loan that is due and owing to her from the Debtors, a loan that she claims was made from her to the Debtors under false

pretenses.

Background and the Parties' Allegations

At the time of the relevant transaction, Ms. Donahoo, the Plaintiff, was a long-time friend and a part-time employee of Mr. and Mrs. Simone, the Debtors.  Ms. Donahoo alleges that Mr. and Mrs. Simone fraudulently induced her to lend money to them by misrepresenting that an emergency existed, that they were scheduled to close a valuable real estate deal the following day, but that it would collapse without Ms. Donahoo's financial help because a prior investor had pulled out at the eleventh hour.

The Plaintiff alleges that the Debtors asked her for a loan of $50,000 and told her that her she would be paid back quickly, and that the maximum time that this loan would be outstanding would be four months.  Ms. Donahoo asserts that she agreed to make this loan for her good friends even though she could ill afford to do so; she had to access a line of credit that was her sole source of funds other than a modest employment income.

The Plaintiff alleges (and it is not disputed) that she did not receive her money at the end of four months.  After two years, the Plaintiff had received only modest payments from the Debtors. The Plaintiff alleges that it was not until the Debtors filed for bankruptcy protection that she learned for the first time that settlement under the real estate transaction for which she lent money did not occur the day after she made the loan to the Debtors, and did not occur for approximately 60 days thereafter.

The Plaintiff further alleges that even while Mr. and Mrs. Simone deflected the Plaintiff's requests for repayment, they had taken funds out of a personal line of credit that would have been more than adequate to repay her, but that instead of repaying her, the Simones used proceeds from

2

their personal line of credit for frivolous expenses. Ms. Donahoo alleges that there was never an actual emergency, and that the Debtors created a false emergency to prey on her friendship with them. She believes that their real motivation in ensuring that the real estate transaction went forward was to protect a commission payable to themselves (via an intermediate business entity) in excess of $45,000.00

For their part, the Debtors allege that Ms. Donahoo had requested to become an investor in a real estate deal and that unfortunately for Ms. Donahoo, the timing was such that her foray into the real estate business coincided with the downturn of the market. Thus, her losses were simply a product of the existing market conditions and nothing more. As to their failure to re-pay her with the money that they took from their own line of credit, Mr. Simone testified that it was never his intent that Ms. Donahoo would be repaid with his personal funds.

<u>Jurisdictional Statement</u>

Federal district courts "have original jurisdiction but not exclusive jurisdiction of all civil proceedings arising under title 11 [of the Bankruptcy Code], or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Section 157(a) of title 28 permits a district court to refer "any and all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges within the district. *Id.* § 157(a). By standing order, the United States District Court for the District of Maryland has referred to the United States Bankruptcy Court for the District of Maryland all cases under the Bankruptcy Code, and all proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. *See* Local Rule 402 of the Local Rules of the United States District Court of Maryland. This is a core proceeding over which this court has statutory and constitutional authority. *See Stern v. Marshall*, __ U.S. ___, 131 S. Ct. 2594

3

(2011).  *See also In re Martinez*,___B.R. ___,  2011 WL 2925481 (Bankr. N.D. Oh. 2011)

(recognizing a bankruptcy court's statutory and constitutional authority over dischargeability

action).  To the extent that it is found that this Court lacks authority to enter its order herein as a final

order, the Court submits this determination as proposed findings of fact and conclusions of law.

<u>Legal Standard</u>

Relying on section 523 (a)(2)(A) of the Bankruptcy Code, Ms. Donahoo seeks to except from

the Debtors' discharge their liability for the Loan.  Section 523 (a)(2)(A) provides as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or
>
> 1328(b) of this title does not discharge an individual debtor from
>
> any debt--
>
> (2) for money, property, services, or an extension, renewal, or
>
> refinancing of credit, to the extent obtained by--
>
> (A) false pretenses, a false representation, or actual fraud, other
>
> than a statement respecting the debtor's or an insider's financial
>
> condition.

11 U.S.C. §523 (a)(2)(A).

Exceptions to discharge are narrowly construed in order to further the Bankruptcy Code's

policy of providing a fresh start to debtors. Ms. Donahoo bears the burden of demonstrating by a

preponderance of the evidence that the claim comes within an exception to discharge.  *In re White*,

128 Fed.Appx. 994, 998, 2005 WL 984195, *3 (4th Cir. 2005), *citing  Grogan v. Garner,* 498 U.S.

279, 286 (1991).[1]

The Fourth Circuit has addressed the section 523(a)(2)(A) dischargeability exception.  In order to establish the non-dischargeability of a debt pursuant to this provision, the creditor must establish each of five elements, as follows: (1) a false representation by the debtor, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance by the creditor on the representation, and (5) a showing that the representation was the proximate cause of damages.  *In re Rountree,* 478 F.3d 215, 218 (4th Cir. 2007).

The *Rountree* court emphasized that each element of §523(a)(2)(A) must be proved by a preponderance of the evidence.  In *Rountree*, the debtor had engaged in fraud as against the creditor.[2]  *Rountree* at 222.   But a determination that the debtor engaged in fraud, standing alone, is not sufficient to invoke the dischargeability exception of section 523 (a)(2)(A); each element of the statutory "fraud exception" must be established.  *Id*. at 224.

For example, if the creditor demonstrates that the debtor made a materially false statement with an intent to deceive, but fails to establish that the creditor relied on the statement, the debt is discharged.  *See In re Smith*, 2 B.R. 276, 279 (E.D. Va. 1980) (internal citation omitted).

Ms. Donahoo is Entitled to A Non-Dischargeable Judgment Pursuant to 523 (a)(2)(A)

---

[1]  *Grogan v. Garner* settled a split in the circuits as to the burden of proof placed upon the moving creditor.  Prior to *Grogan*, many courts reasoned that §523 (a)(2)(A) required proof of each element by clear and convincing evidence.  *Grogan* clarifies that this section requires proof by the lesser preponderance of the evidence standard.

[2] "Rountree's activity here was nothing if not deceitful..." *Rountree, supra* at 222. (Wilkinson, J.) (concurring).

After hearing the testimony of Mr. Simone, Mrs. Simone and Ms. Donahoo, the Court accepts as credible Ms. Donahoo's version of events.  Ms. Donahoo was an earnest and believable witness.  The Court did not find credible the testimony of Mr. and Mrs. Simone that Ms. Donahoo approached them with a request to become a "hard money lender"[3] and to put her line of credit to use in a real estate deal with them.  Ms. Donahoo is an employee with modest income and has financial the obligations of a single mother, about which she testified in earnest.  It is just not believable that she wished to place at risk her sole source of security (her home's equity) in the service of becoming a "hard money lender" or investor to the Simones.  In contrast, Mr. and Mrs. Simone demonstrated a lack of candor as, for example, when they failed to explain credibly when their real estate transaction actually closed, ultimately waffling as to whether there was more than one "closing."  In short, the Court accepts Ms. Donahoo's version of the facts and does not accept the version presented by the Debtors.

Ms. Donahoo has established that: (1) the Debtors  made a false representation to Ms. Donahoo when they led her to believe that a crisis situation existed because their closing would not occur and that the closing must occur on the following day, (2) the Debtors had knowledge that their representation was false, (3) the Debtors made this representation with an intent to deceive Ms. Donahoo into believing that her financial assistance was needed urgently on a short-term basis, (4) Ms. Donahoo justifiably relied on the misrepresentation of a long-time friend who had experience in the real estate business, and (5) this misrepresentation was the proximate cause of Ms. Donahoo's damages.    Each of the elements is discussed in further detail below.

---

[3] A "hard money lender" is usually a private individual who lends money based on the value of underlying real property without regard to the credit worthiness of the borrower.

6

1. <u>The Debtors Made Misrepresentations</u>

Ms. Donahoo and the Debtors had been close friends since high school and for at least 30 years prior to entering into the transaction at issue in this case. (T-11, 12, 18, 31, 32, 71). Ms. Donahoo was employed by the Debtors as a part-time employee in their real estate business prior to entering into the transaction at issue in this case. (T- 12)   On April 27, 2006, Vito Simone solicited Ms. Donahoo for a loan for a real estate project.[4]  Both of the Debtors represented to Ms. Donahoo that an immediate loan from her was crucial because settlement on the project was scheduled for the next day, an investor had backed out, and $50,000 was needed to go to closing or the whole project would collapse at a great personal loss to the Debtors. (T. 13, 14, 15, 32, 72, 73, pl. ex. 9).[5]

The Debtors told Ms. Donahoo that without these additional funds, the required closing the following day could not occur, the deal would be lost, and the Debtors would suffer great financial harm as a result.  Mr. and Mrs. Simone told Ms. Donahoo that they would need the loan only for a short period of time, and in no event longer than four months. (T-14, 32, 56, Pl. Ex. 4, 9).  The Debtors represented to Ms. Donahoo that she would receive a security interest in the underlying property as consideration for making the loan and that the security interest would be prepared for her by Mr. Jerry Sopher, the settlement attorney.  (T - 14, 18).   As it turned out, almost none of this was true.

Ms. Donahoo loaned the Debtors $50,000 on April 27, 2006 (the "Loan").  (T - 17, Pl. Ex.

---

[4] That it was the Debtors who asked Ms. Donahoo for a loan, and not Ms. Donahoo who was seeking to make an investment,  is underscored by Mr. Simone's e-mail to Ms. Donahoo that states, "I am very sensitive to the situation that I created by asking for your help financially."  *See* Plaintiff's Exhibit 9.

[5] No evidence was presented at the trial that there had ever been another investor who had backed out.

1). The deal, which did not close the next day notwithstanding the Loan, was not lost. The Debtors did not have a large personal stake in the deal - - they had a mere $5,000 of their own money at risk. (T.37 - 38).

Mr. and Mrs. Simone wanted to create the impression of their own financial well-being so that Ms. Donahoo would view their need as a temporary, acute crisis and thus would be more comfortable making the Loan and, feeling assured that the means existed to reimburse her. However Mr. Simone later admitted that he and his wife were not financially secure at the time that they sought the Loan - - they had a cash cushion of less than sixty days, they had no retirement fund, owned no securities or other cash equivalents and had only the equity in their home. (T. 54-55).

## 2. The Debtors Knew that the Representations Were False

The Debtors' knowledge that their representations were false may be inferred from circumstantial evidence or from their course of conduct. *See, e.g., In re Ireland*, 441 B.R. 572 (Bankr. W.D. Ky. 2011). The Debtors here manufactured the appearance of an exigent situation where none existed. It appears that at the time they told Ms. Donahoo otherwise, they knew the transaction could not close the following day and that there were not sufficient funds on hand to allow the closing to go forward notwithstanding Ms. Donahoo's contribution.[6] It was no surprise to the Simones that the deal did not close the next day. Settlement on the project occurred on June 30, 2006, more than two months after the date on which the Debtors told Ms. Donahoo it would and must occur. The Debtors did not disclose to Ms. Donahoo that settlement took place months later

---

[6] Mr. Simone testified that there was (or may have been - - he wasn't entirely clear or sure) a "dry" settlement due to lack of funds. *See* T. 42-43,89.

(and not on the day following the day she made the Loan).  (T. 17, 39, 86, 87, 92, Pl. Ex. 3)[7]  Rather than contacting Ms. Donahoo when the settlement delay occurred and discussing this turn of events with her, they did not tell her the deal did not close.  They simply kept her money.

The Debtors knew that they themselves did not have a substantial amount of money at risk although they told Ms. Donahoo otherwise.   They played on her emotions as a good friend, believing (correctly) that she would not want to see her friends lose a substantial sum of money.  But the Debtors knew they had only $5,000 of their own money in the deal.  They knew that the sum they had at risk was relatively insubstantial despite what they told Ms. Donahoo.

### 3.  The Debtors Intended to Deceive Ms. Donahoo

The Debtors' intent to deceive may also be inferred through circumstantial evidence.  *See, e.g., In re Carlson*, 426 B.R. 840 (Bankr. D. Idaho 2010).  The Debtors here intentionally engaged in a scheme to deceive Ms. Donahoo.  They created a false emergency situation that was contrived to play upon her emotions and induce her into lending them money based on false statements.  The Debtors had much to gain and little to lose from this. The Debtors obtained a commission in the amount of $46, 066.86 at closing. (T. 45-47).  The project was enabled to go forward while their only initial investment was $5,000.00.

---

[7]  The Debtors put into evidence a number of settlement sheets dated April 28, 2006 and June 29, 2006.  Some of the settlement sheets are confusing - - some appear to have the same  purchase price but different settlement dates. Mr. Simone testified that he is not sure what happened (there may have been a title issue), but he and his partner signed settlement sheets dated April 28, 2006, even though settlement did not actually take place and title did not actually transfer until June 29, 2006.  (T. 39 - 41).  Mr. Simone testified that an earlier "dry" settlement may have occurred because there were not enough funds to settle.  (T. 42-43, 89) The later settlement date is consistent with the letter from Jerry Sopher, Esquire, the settlement attorney, to Ms. Donahoo and the settlement sheet he attached as an exhibit to his letter. *See* Plaintiff's Exhibit 1.

In October, 2006, Ms. Donahoo inquired about repayment of the Loan and was told that it would not be immediately forthcoming due to delays in the project.  (At this time, the Debtors had sufficient cash to re-pay Ms. Donahoo because they had refinanced their home equity line of credit which was not disclosed to Ms. Donahoo.  (T. 17, 19, 66, 67, 77)).  On or about February 19, 2007, almost ten months after the Loan was made, the Debtors prepared a promissory note for Ms. Donahoo to memorialize the loan transaction. (T. 20, 58. Pl. Ex. 5)[8]

    4. <u>Ms. Donahoo Justifiably Relied on the Misrepresentations</u>

"Justifiable reliance" is a flexible and subjective standard that "requires more than actual reliance but less than reasonable reliance." *In re White* 128 Fed.Appx. 994, 999, 2005 WL 984195, *4 (4th Cir. 2005) (internal citation omitted).  Justifiable reliance "is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases."  *Field v. Mans,* 516 U.S. 59, 71 (1995) (*citing* Restatement (Second) of Torts (1976).  Generally, the justifiable reliance standard does not impose a duty to investigate unless there are circumstances indicating that an investigation is appropriate and reliance is unwarranted.  *Fields* at 70-72.  *See also*, *In re Biondo,* 180 F.3d 126, 135 (4th Cir. 1999) (adopting a "minimal standard" for justifiable reliance in case in which there were no red flags).

---

[8] The Debtors that the loan transaction at issue is either (1) a partnership debt owing to Ms. Donahoo payable by the real estate partnership in which she "invested," or (2) the obligation of only Mr. Simone and not the obligation of Mrs. Simone.  This argument is undercut by the Debtors' schedules which show the obligation as personal and joint, as well as a promissory note which was prepared after-the-fact by Vito Simone and which recites "We, Vito Simone and Gail Simone ("Borrowers")..."  The version of the promissory note submitted by the Debtors bears only Mr. Simone's signature, but the version submitted by Ms. Donahoo has signature blocks for Mrs. Simone and Ms. Donahoo.  *See* Debtors' Exhibit 1.  The copy of the promissory note submitted by Ms. Donahoo is executed by both Mr. and Mrs. Simone as well as by Ms. Donahoo.  *See* Plaintiff's Exhibit 5.

Whether reliance is justified in a particular instance also takes into account the relationship of the parties. *White, supra*. For example, when the parties have a past course of dealings that is marked by trust and confidence, the history between the parties may make it justifiable to rely on a party's representation. *See Sanford Institution for Sav. v. Gallo* 156 F.3d 71, 76 (1st Cir. 1998).

Ms. Donahoo was a long-time friend of the Debtors. She viewed them with trust and confidence. She was relatively unsophisticated in real estate matters. Mr. Simone was a real estate professional and developer who had served as president of the Greater Baltimore Board of Realtors. (T - 31) In these circumstances, it was justifiable for Ms. Donahoo to rely on the Simones' representations. Furthermore, the Debtors created a "false emergency" time pressure thereby making it far less likely that Ms. Donahoo could perform any sort of due diligence. In these circumstances, the Court finds that Ms. Donahoo's reliance was both justifiable and reasonable.

5.     <u>The Misrepresentations were the Proximate Cause</u>

The Supreme Court makes clear that even though § 523(a)(2)(A) only requires "justifiable" reliance instead of "reasonable" reliance by the lender, that the reasonableness of the lender's reliance is still a relevant inquiry to a § 523 (a)(2)(A) analysis. *Fields*, *supra*. The "greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in fact....[t]he subjectiveness of justifiability cuts both ways, and reasonableness goes to the probability of actual reliance." *Fields,* 516 U.S. at *76*. This has bearing on the final factor in the § 523 (a)(2)(A) analysis, which is the proximity of the reliance to the damages.

Ms. Donahoo's reliance on the Debtors' misrepresentations was the proximate cause of her damages. She had children near college age and that she would not have made the loan if she had been told and believed that her money would be tied up for longer than four months. She wanted

11

to ensure that the money would be available for her children's education.  At the time she made the Loan, Ms. Donahoo was a single mother who had modest income as a paralegal with mounting educational expenses for her children.  She had limited financial resources and her only available liquid asset of any significance was a home equity line of credit.  (T. 11-15, 16, 34, Pl. Ex. 9).  She really could not afford to lend the Debtors money; that she only did so because it was presented to her as a "make or break for the next day." (T. 23).  Based on the evidence presented at trial and the record in this case, Ms. Donahoo has sufficiently proved that she would not have lent $50,000 to the Debtors had she known that closing was not imminent, that the Loan would not be of a short duration or that she would get no security for the indebtedness.  *See In re Biondo,* 180 F.3d 126, 135 (4th Cir. 1999) (causation exists when the fraudulent representation induces the financing).

The Debtors filed their bankruptcy petition on February 18, 2009.  Schedule F filed in the Debtors' bankruptcy case reflects that they owe a joint obligation to Ms. Donahoo.   The unpaid principal balance on the Loan at the time of the filing of the chapter 7 petition was $44,500. (T. 25, 68, Plaintiff's Exhibit 5 (demand letter)).  A judgment will issue in this amount.

## Conclusion

By a preponderance of the evidence, Plaintiff has demonstrated that she is entitled to judgment under § 523 (a)(2)(A).  The Court will enter judgment in her favor.  A separate judgment will enter.

cc:    Vito and Gail Simone, Debtors
       Andre R. Weitzman, Esq.
       Russell D. Karpook, Esq.

**END OF MEMORANDUM**